## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY EMPLOYEES UNION )
800 K Street N.W., Suite 1000 )
Washington, D.C.  20001 )
)
                Plaintiff, )
)
        v. )   Case No.   26-2104
)
INTERNAL REVENUE SERVICE )
U.S. DEPARTMENT OF TREASURY )
1111 Constitution Avenue N.W. )
Washington, D.C. 20224, )
)
                Defendant. )
_____ )

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1.      "The point of the First Amendment is that majority preferences must be expressed in some fashion other than silencing speech on the basis of its content." *R. A. V. v. St. Paul*, 505 U.S. 377, 392 (1992).

2.      So, "[a]t the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024). The government cannot "use the power of the State to punish or suppress disfavored expression." *Id*. at 188.

3.      Similarly, the First Amendment protects the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000)

(quotation omitted). The government may not burden that freedom without showing "compelling state interests, unrelated to the suppression of ideas" that it cannot achieve through "less restrictive" means. *Id.* at 648.

4.    This case presents a textbook example of First Amendment violations for viewpoint discrimination and infringement on associational activity. The Internal Revenue Service (IRS) has issued a directive targeting flyers, posters, and other paraphernalia of one type only: those promoting Plaintiff National Treasury Employees Union (NTEU), which has represented IRS employees for nearly a century. The IRS is removing NTEU materials—and NTEU materials only—from workplace common spaces and employees' personal workstations, where other types of materials unrelated to government business remain allowed. The IRS is removing (or ordering IRS employees to remove) NTEU materials to send a message of unfavored status and to deter associational activity that the First Amendment protects.

5.    NTEU represents federal workers in thirty-eight federal agencies and departments, including tens of thousands of employees at the IRS. The IRS is NTEU's largest bargaining unit, comprising roughly half of the workers that NTEU represents. And it is NTEU's oldest bargaining unit: NTEU has represented IRS employees since long before Congress created a statutory right to organize federal workers in 1978.

6.    NTEU has stood up against this Administration's anti-federal worker policies and actions, including in the courts. In response, this Administration has

targeted NTEU repeatedly. And it has tried to hit NTEU where it hurts the most: with its largest bargaining unit, the IRS.

7.      On March 27, 2025, this Administration stripped the collective-bargaining rights of three-quarters of the federal workers who had them through Executive Order No. 14,251, Exclusions from the Federal Labor-Management Relations Programs (Mar. 27, 2025). The Executive Order affected nearly two-thirds of the workers that NTEU represents, including its IRS bargaining unit. The Order invoked national security as the basis for the action, even though the IRS has no plausible connection to national security work. NTEU has challenged the Executive Order on First Amendment and ultra vires grounds in a separate lawsuit that remains pending.

8.      A White House Fact Sheet issued with the Executive Order indicated that the Order was driven by animus against "[c]ertain Federal unions [] declaring war on President Trump's agenda" and a view that collective-bargaining "enables hostile Federal unions to obstruct agency management." In NTEU's separate litigation challenging the Executive Order, the government has not disputed that NTEU is one of the "hostile Federal unions" to which the Fact Sheet refers.

9.      As a further indication that the Executive Order targeted NTEU, the morning after the Order issued, the Treasury Department sued a local NTEU chapter in Kentucky. The lawsuit, like the Executive Order, referred to NTEU as a "hostile union" and sought a judgment that NTEU's national collective-bargaining agreement with the IRS was void in light of the Order. *See* Compl., *U.S. Dep't of*

*Treasury v. NTEU Ch. 73*, No. 2:25-cv-49 (E.D. Ky.). The Administration's

preemptive lawsuit against NTEU was dismissed for lack of standing. *U.S. Dep't of*

*Treasury v. NTEU Ch. 73*, 783 F. Supp. 3d 991 (E.D. Ky. 2025).

10.     The IRS directive here is the latest chapter in the Administration's

continued attack on NTEU, and it strikes even more deeply at First Amendment

freedoms. Now, the IRS is not only trying to prevent NTEU from carrying out the

statutory function that it was elected to perform as the IRS employees' exclusive

bargaining representative, but it is also trying to prevent every individual IRS

employee from even expressing support for NTEU as their workplace advocate.

11.     The IRS is thus trying to literally erase NTEU from the same

workplaces in which the Union has advocated for its IRS members since 1938. The

IRS directive both targets NTEU materials being displayed for removal and

prohibits such material from being displayed in the future. The latter is a prior

restraint affecting tens of thousands of NTEU members nationwide and a burden on

their right to associate. The IRS directive is incompatible with the First

Amendment on multiple grounds and must be enjoined.

## JURISDICTION

12.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## VENUE

13.     Venue is proper in the District Court for the District of Columbia

pursuant to 28 U.S.C. § 1391(e). NTEU is headquartered in Washington, D.C. So is

the IRS, and a substantial part of the events or omissions giving rise to the claim occurred in Washington, D.C.

## PARTIES

14.    Plaintiff NTEU is an unincorporated association with its principal place of business at 800 K Street, N.W., Suite 1000, Washington, D.C. 20001. NTEU represents tens of thousands of federal employees in thirty-eight departments and agencies, including at the IRS. NTEU negotiates collective-bargaining agreements with agency employers, pushes for legislation that improves the working lives of federal employees, and engages in general advocacy for federal employees' rights.

15.    NTEU brings this action on behalf of itself and the IRS employees that it represents. The IRS directive's First Amendment viewpoint discrimination and its burdens on First Amendment associational rights plainly injures NTEU and its members, including those described in this complaint.

16.    Defendant IRS is a federal agency headquartered in Washington, D.C. It issued the directive at the center of this complaint.

## STATEMENT OF CLAIMS

### The IRS Directive Targeting NTEU

17.    The IRS directive is reflected in a May 29, 2026 email from the Acting Chief of IRS Facilities Management & Security Services (FMSS) to all FMSS employees. That email, attached as Exhibit 1 to this complaint, states, in relevant part:

> IRS leadership has identified instances of NTEU flyers, posters, and other
> paraphernalia remaining in place at IRS posts of duty. Given the high-profile

nature of these materials as they relate to the President's Executive Order, and given IRS senior leadership's prior directive to ensure all of these materials have been removed, I've been asked to ensure that recurring instances of NTEU materials in the workplace be addressed immediately. Therefore, I'm tasking all hands with the following:

- Please conduct a walkthrough of your post of duty and remove any and all NTEU materials you observe, by the end of next week (June 5th).
- If the material is inaccessible (e.g. inside a locked bulletin board, on the interior of a transparent, locked door, etc.) please take whatever steps are necessary to access and remove the material (within reason – obviously don't break or vandalize anything to get to it).
- If you are traveling to a site that does not have resident FMSS staff, please take the time to conduct a walkthrough there as well while you are on -site.
- Please confirm through your management chain, by building code, where and when walkthroughs have been completed.

. . . IRS leadership is separately engaging other business units to assist in locations where FMSS does not have on-site staff. I realize that employees may re-post materials so please continue to be vigilant and remove items that may reappear.

18.    Illustrating IRS leadership's enlisting of its other units to carry out—

expeditiously—its directive, on June 8, 2026, an IRS supervisor in a southwest state

emailed his supervisees to state:

I received an email today regarding NTEU signage in the [post of duty]. FMSS has requested that where they do not have [a] physical presence, that management assist with compliance on the removal of any NTEU signage. [The supervisor's division] has agreed to support this action. Please make sure that if you have any NTEU signage within the POD[,] that it is removed by COB Wednesday, 06/10/2026.

**The IRS's Implementation of Its Directive**

19.    The IRS directive covers two types of areas within IRS workplaces.

20.    The first area consists of common spaces—in practice, that is primarily bulletin boards in common spaces on which employees have been free to post materials without seeking approval. Employees have used these bulletin boards to post a broad range of materials in addition to NTEU materials—such as materials regarding events at their churches, materials advertising lawncare or other services, materials selling goods like Girl Scout cookies, and holiday-related materials.

21.    The second area that the IRS directive covers is individual employee workstations, i.e., cubicles. On the outside of these workstations, employees have been free to display whatever they wish so long as the material is not profane, vulgar, or advocating for a political candidate. Employees often display, on the outside of their cubicles, for example, patriotic materials like American flags, sports paraphernalia, or holiday decorations, in addition to NTEU materials. On the inside of workstations, employees are likewise free to display what they wish, as long as the material is not profane, vulgar, or advocating for a political candidate. Materials that have been on display inside of employee cubicles, apart from NTEU materials, include those related to television shows, academic institutions, sororities and fraternities, employees' families, and sports.

22.    The IRS's implementation of its directive has been swift and aggressive, further underscoring to its employees NTEU's disfavored status.

7

23.    At IRS facilities throughout the country, including in Atlanta, GA, NTEU materials on bulletin boards intended for general employee use were removed or obscured.  Here is one example of the IRS papering over NTEU materials in a bulletin board:



24.    On June 5, 2026, FMSS dispatched two employees to an IRS facility in Decatur, Georgia, where Lakisha Murphy serves as the local NTEU Chapter President. According to Ms. Murphy, sending two FMSS employees to her very small office building, standing alone, was excessive. These two FMSS employees walked around the building and told at least two other employees present to not display anything related to NTEU. The FMSS employees walked from cubicle to cubicle to relay this message to even those employees who were not displaying any NTEU materials at all to deter them from putting up such materials in the future. And both FMSS employees came to Ms. Murphy's cubicle to instruct her to remove her NTEU materials; otherwise, they said, they would remove those materials at

the end of the workday. That is what occurred: FMSS removed NTEU flags from three cubicles and disposed of them in the men's restroom. One flag was returned upon Ms. Murphy's request, but the others could not be retrieved from the restroom waste.

25.    Similarly, on June 4, 2026, FMSS made its presence felt at an IRS facility in Horsham, PA. While the local NTEU Chapter President, Thomas Parise, was in the office but occupied with other tasks, an FMSS employee removed NTEU flyers from the outside of his cubicle. Mr. Parise sent an email seeking the return of his NTEU materials. An FMSS Section Chief confirmed to him that his materials would not be returned, saying that the "directive is coming from FMSS HQ."

26.    At a large IRS campus in Kansas City, MO, where Shannon Ellis is the local NTEU Chapter President, FMSS has been particularly aggressive in targeting NTEU materials. In early June 2026, the local NTEU chapter set up a table at the facility's cafeteria during lunchtime as a way of inviting employees to speak with them about workplace issues. The chapter had NTEU flyers at the table. The cafeteria is a location where employees would sometimes put flyers to advertise a cause or event. The chapter had set up a table in the cafeteria with NTEU flyers on previous occasions. But on this occasion in early June, after the issuance of the IRS directive, an FMSS employee took the NTEU flyers at the chapter's table, crumbled them up, and threw them away.

### The Irreparable Harm to NTEU and Its Members

27.     NTEU and its members, including those referenced in this complaint, have lost their ability to speak in favor of their union.  This ongoing loss, moreover, comes during a time in which the government is attacking NTEU and refusing to recognize its collective-bargaining relationship with NTEU. Indeed, it comes at a time when the Administration is taking aim at the entire federal sector labor relations scheme that Congress created. Neither NTEU nor its members will get back these lost opportunities to advocate for and to show support for their union.

28.     "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976).

29.     "When a government employer's restrictions on employee speech tread on First Amendment interests, those restrictions work irreparable injury." *Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 108 (3d Cir. 2022).

30.     This is unquestionably true with the type of broad prior restraint that is at issue here. The IRS directive prohibits speech on a matter of public concern, speech that is pro-union, at a pivotal time for NTEU. The IRS directive comes at a time when NTEU is under attack from this Administration and when the IRS is aggressively attempting to erase NTEU's presence—and denying NTEU members their rights—in the workplace.

**The First Amendment Framework**

31.    If a public employee speaks as a private citizen on a matter of public concern, a court will balance that employee's interests against the government's to determine if the First Amendment's protections apply.

32.    Most, if not nearly all, union-related speech—including speech about union organizing—is speech on matters of public concern. *See, e.g., Janus v. AFSCME, Council 31,* 585 U.S. 878, 912-13 (2018) (stressing that public education unions' positions in collective bargaining address matters "of great public importance," including "how public money is spent," "education policy," "child welfare, healthcare, and minority rights"); *Cook v. Gwinnett Cnty. Sch. Dist.*, 414 F.3d 1313, 1319 (11th Cir. 2005) ("Issues regarding the operation of government, including issues of union organization, are often considered matters of public concern.").

33.    Here, the IRS directive broadly prohibits present and future private speech in the form of NTEU flyers, posters, and other written material. And those materials contain speech on a matter of public concern: they promote NTEU to members and non-members alike at a time when the IRS is refusing to recognize the union. Thus, the materials promote union solidarity among members and union organizing to non-members.

34.    The Supreme Court's *NTEU* framework provides the standards for assessing the IRS directive's constitutionality, given that it is a broad prior restraint affecting tens of thousands of NTEU-represented workers nationwide, as

11

opposed to an isolated disciplinary situation for which the framework established under *Pickering v. Board of Education,* 391 U.S. 563 (1968), would govern.

35.    The government's burden when seeking to justify a broad deterrent on speech that affects an entire group of its employees is greater than when it is defending an individual disciplinary decision. *United States v. NTEU*, 513 U.S. 454, 468 (1995) ("Unlike an adverse action taken in response to actual speech, this ban chills potential speech before it happens."); *see also NAACP v. Button*, 371 U.S. 415, 438 (1963) ("Broad prophylactic rules in the area of free expression are suspect.") (citations omitted).

36.    In cases involving a broad ban on group speech, "the Government must show that the interests of both potential audiences and a vast group of present and future employees in a broad range of present and future expression are outweighed by that expression's 'necessary impact on the actual operation' of the Government." *NTEU*, 513 U.S. at 468 (quoting *Pickering*, 391 U.S. at 571). This is an exacting standard.

37.    Here, NTEU materials remaining in common space and employee workstations at IRS facilities have no "impact on the actual operation of the Government." Indeed, those types of signs and posters have been in IRS workplaces for decades. And it cannot be that continuing to promote NTEU adversely affects IRS's work; indeed, Congress's explicit finding is that unions have a positive effect in federal workplaces. 5 U.S.C. § 7101(a). So, there is nothing on the government's side of the scale.

12

38.    On the other side of the scale is the ability of tens of thousands of NTEU-represented workers across the country—and, more broadly, the entire IRS workforce—to show support for the union that had a nearly century-old history advocating for IRS employees. That is especially important now, where in the public sphere the Administration has painted NTEU as "hostile" and is refusing to recognize the union.

## CAUSES OF ACTION

**Count 1:   The IRS directive constitutes viewpoint discrimination in violation of the First Amendment's Free Speech Clause.**

39.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

40.    The IRS's directive violates a core First Amendment principle: the prohibition on viewpoint discrimination.

41.    The Supreme Court has long held that "[t]he government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995).

42.    Viewpoint-based sanctions constitute a "blatant and egregious form of content discrimination" that is anathema to the First Amendment. *Reed v. Town of Gilbert*, 576 U.S. 155, 168-69 (2015) (quotation marks omitted) (quoting *Rosenberger*, 515 U.S. at 829).

43.    "[E]ven in a non-public forum, the law is clearly established that the state cannot engage in viewpoint discrimination—that is, the government cannot

discriminate in access to the forum on the basis of the government's opposition to the speaker's viewpoint." *Cook*, 414 F.3d at 1321 (citing *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). *Accord Cornelius v. NAACP Legal Def.* & Educ. Fund, 473 U.S. 788, 811 (1985) ("The existence of reasonable grounds for limiting access to a nonpublic forum, however, will not save a regulation that is in reality a façade for viewpoint-based discrimination.").

44.    The IRS's decision to single out NTEU materials with its directive, and to do so after the White House labeled NTEU as a "hostile" union for its resistance to the Administration's anti-worker policies, shows that the IRS is using its power to suppress the protected expression of NTEU and to show that NTEU is disfavored. The First Amendment prohibits such conduct.

45.    The IRS directive targets NTEU materials alone. IRS employees may continue to display materials regarding other organizations, like local churches and the Girl Scouts, on general use bulletin boards. And they may continue to display materials like family photos, sports or college paraphernalia, church materials, and other posters or flyers on the outside and the inside of their workstations.

46.    While the IRS may disagree with some of the viewpoints that it attributes to NTEU, the First Amendment does not allow it to punish NTEU based on those viewpoints.

47.    The IRS's First Amendment violations have caused NTEU and its members, including those referenced in this complaint, ongoing and irreparable harm.

48.    The Executive Order described above removes the IRS from the statutory collective-bargaining regime, and the IRS, in turn, no longer participates in any statutory or contractual dispute resolution processes with NTEU. That state of affairs underscores that federal district court is the only forum in which NTEU may meaningfully raise this First Amendment claim.

**Count 2:   The IRS directive infringes on the First Amendment Freedom of Association.**

49.    The paragraphs above are incorporated and reasserted as if fully set forth herein.

50.    The government may not impose punishments based on protected association. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 72 (1990).

51.    "Regulations that impose severe burdens on associational rights must be narrowly tailored to serve a compelling state interest." *Clingman v. Beaver*, 544 U.S. 581, 586 (2005).

52.    The IRS directive violates the right to freedom of association under the First Amendment.

53.    The IRS directive chills IRS employees' willingness to associate with NTEU, thus burdening NTEU's freedom of association. *See Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 606 (2021) (alterations omitted) (citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958)).

54.     NTEU's ability to continue associating with IRS workers has been severely impaired. The ability of NTEU's members at the IRS to associate with

15

NTEU has likewise been harmed, which is an injury that NTEU raises on behalf of those members. *See Kowalski v. Tesmer*, 543 U.S. 125, 130-31 (2004).

55.    The IRS's First Amendment violations are causing and will continue to cause ongoing, irreparable harm to NTEU and its members, including those referenced in this complaint.

56.    The Executive Order described above removes the IRS from the statutory collective-bargaining regime, and the IRS, in turn, no longer participates in any statutory or contractual dispute resolution processes with NTEU. That situation underscores that federal district court is the only forum in which NTEU may meaningfully raise this First Amendment claim.

## REQUEST FOR RELIEF

Wherefore, Plaintiff NTEU respectfully requests judgment against Defendant IRS:

A.    Declaring that the IRS directive violates the First Amendment.

B.    Enjoining the IRS from implementing the IRS directive.

C.    Ordering the IRS to rescind the IRS directive and any related guidance.

D.    Awarding Plaintiff reasonable attorney fees and costs incurred.

E.    Ordering such further relief as the Court may deem just and appropriate.

16

Respectfully submitted,

*/s/ Paras N. Shah*
PARAS N. SHAH
General Counsel
D.C. Bar 983881

*/s/ Allison C. Giles*
ALLISON C. GILES
Associate General Counsel
D.C. Bar 439705

*/s/ Jessica Horne*
JESSICA HORNE
Assistant Counsel
D.C. Bar No. 1029732

*/s/ Lindsay Dunn*
LINDSAY DUNN
Assistant Counsel
D.C. Bar 90036066

NATIONAL TREASURY EMPLOYEES UNION
800 K Street N.W., Suite 1000
Washington, D.C.  20001
(202) 572-5500
paras.shah@nteu.org
allie.giles@nteu.org
jessica.horne@nteu.org
lindsay.dunn@nteu.org

June 15, 2026            Counsel for Plaintiff NTEU

17